UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
                             )
v.                           )    No.:   3:13-CR-117-TAV-HBG-1
                             )
LESTER ALLEN BARNES,         )
                             )
         Defendant.          )

## MEMORANDUM OPINION AND ORDER

Defendant believes himself entitled to compassionate release under 18 U.S.C.

§ 3582(c)(1)(A)(i) [SEALED Doc. 90]. The government essentially waives the threshold

question of exhaustion [SEALED Doc. 92], permitting the Court to consider defendant's

request on the merits. Because defendant presents extraordinary and compelling reasons

for release and because he otherwise qualifies for a sentence reduction under

§ 3582(c)(1)(A)(i), the Court will **GRANT** defendant's motion.

## I.    Background

A jury convicted defendant in 2014 of three (3) counts of distributing oxycodone,

one (1) count of possessing oxycodone with intent to distribute, one (1) count of

possessing a firearm in furtherance of a drug-trafficking crime, and one (1) count of

possessing a firearm as a felon [Doc. 45]. The government presented evidence at trial

that defendant sold oxycodone in three (3) controlled purchases to a confidential

informant, who reported to law enforcement officers that she saw defendant with firearms

during the drug transactions [Trial Tr., Doc. 64 p. 30, 37, 51, 69]. The government also

presented evidence that a law enforcement search of defendant's residence disclosed quantities of prescription oxycodone pills, $1,700 cash (including marked money from the controlled purchases), multiple firearms, and ammunition [*Id.* at 109, 122–130]. The first officer who entered the residence testified that defendant was sitting on a waterbed when the officers breached the door and that defendant reached down to the side of the bed but was intercepted by the officer who suspected defendant was reaching for a gun; the officers later discovered a loaded revolver pistol under the water mattress [*Id.* at 101–04, 107, 126–27]. Defendant also had a bag containing oxycodone pills next to him on the bed [*Id.* at 71, 77–78, 103, 137–38]. Trial testimony established that defendant obtained some of the pills he sold by "sponsoring" other individuals for doctor visits and prescriptions in exchange for a percentage of their pills [*Id.* at 63–64, 73–74].

The Court ultimately sentenced defendant in March 2015 to 106 months' imprisonment, at the low-end of the applicable guideline range including the sixty-month mandatory consecutive sentence for the § 924(c) offense [Docs. 59, 63 p. 27]. In doing so, the Court denied defendant's request for a downward variance because it did not find that defendant's health issues or age took the case outside the heartland of similar cases [Doc. 63 p. 26–27]. The Court also noted that evidence presented at trial indicated defendant distributed oxycodone from his home, and it highlighted the discovery of controlled substances and firearms in and around his sleeping area [*Id.* at 27]. At the time, the Court found that these offense characteristics made a sentence of even partial

home confinement inappropriate because defendant's health and age "did not prevent or dissuade him from committing these crimes from his home" [*Id.*].

The Bureau of Prisons reports that defendant is scheduled for release in May 2022 and is currently housed at FCI Elton, where the BOP reports 360 active infections among inmates and 586 recovered inmates, with nine (9) inmate deaths, as well as seven (7) staff members with active infections, forty-six (46) recovered staff members, and no staff deaths. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 6, 2020).

Defendant submitted a compassionate release request to FCI Elton staff based on the COVID-19 pandemic and his numerous medical conditions on May 6, 2020 [Doc. 92-1]. The warden responded two (2) days later, denying his request because defendant's "concern about being potentially exposed to, or possibly contracting, COVID-19 d[id] not currently warrant an early release" [Doc. 92-2]. Defendant filed a request [Doc. 87] to seal the instant motion [Doc. 88] on May 26, 2020, and the motion was entered as a sealed document on May 28, 2020 [Doc. 90]. The government responded [Doc. 92 (refiled as SEALED Doc. 94)], and defendant replied [Doc. 95]. Thus, this matter is ripe for resolution.

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d

3

323, 326 (6th Cir. 2010)).  The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons.  Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant requests relief under § 3582(c)(1)(A)(i) [Doc. 90].

4

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[1] which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–3 (6th Cir. June 2, 2020). Although the government argues that the exhaustion requirement is jurisdictional [Doc. 92 p. 11–12], the Sixth Circuit has recently found that the provision is a non-jurisdictional "mandatory condition." *Id.* "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). Accordingly, such rules are not amenable to judge-made exceptions. *Id.* (citing *Ross v. Blake*, 135 S. Ct. 1850, 1857 (2016)); *see also United States v. Bolze*, No. 3:09-cr-93-1, 2020 WL 2521273, at *4 ("While 'judge-made exhaustion doctrines . . . remain amendable to judge-made exceptions,' 'mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.'" (quoting *Ross*, 135 S. Ct. at 1857)). Rather, the only exceptions to mandatory claim-processing rules are waiver and forfeiture. *Alam*, 2020 WL 2845694, at *3 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

---

[1] The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

5

Defendant argues erroneously that he has exhausted his administrative remedies and that even if he has not exhausted, the Court can excuse compliance with the exhaustion requirement [Doc. 90 p. 4]. As the government contends [Doc. 92 p. 15], defendant has not "fully exhausted his administrative rights" because, although he received a denial from the warden of his facility prior to filing the instant motion, he did not appeal the denial through the administrative remedy process [Doc. 72 p. 3–5]. *See* 28 C.F.R. § 571.63 (describing inmate's ability to appeal denial of request by warden through Administrative Remedy Procedure and stating that only a denial by the General Counsel or the Director of the BOP constitutes "a final administrative decision"). Nor did defendant satisfy the exhaustion requirement by waiting thirty (30) days from submitting a compassionate release request to FCI Elton's warden before filing the instant motion. *See Alam*, 2020 WL 2845694, at *3 (treating the thirty-day provision as a timing rule that must be strictly enforced in the absence of full administrative exhaustion and thus appearing to foreclose defendant's argument that the requirement does not apply where the warden has denied an inmate's request [Doc. 95 p. 1]). Thus, defendant has not crossed the threshold to consideration of his motion on the merits. Moreover, the Court lacks the authority to excuse the exhaustion requirement in defendant's case by recognizing a judge-made exception for the COVID-19 pandemic as defendant proposes [Doc. 90 p. 4–5]. *Alam*, 2020 WL 2845694, at *3 (citing *Ross v. Blake*, 135 S. Ct. 1850, 1857 (2016)).

6

Although thirty (30) days had not passed at the time the government filed its response, the government reasoned that the Court could deny the motion without prejudice or stay a ruling on defendant's motion until the expiration of the thirty-day period [Doc. 92 p. 15]. The Sixth Circuit rejected this reasoning in *United States v. Alam*, holding that an untimely motion, i.e. one filed before the expiration of thirty (30) days, should be dismissed without prejudice, regardless of whether the thirty-day waiting period has "r[u]n its course" by the time a court considers a motion. 2020 WL 2845694, at *5. Here, defendant filed his motion prematurely, just over one (1) week before the lapse of thirty (30) days from the time of his request to the warden. So, if the government had argued the Court could not consider defendant's motion unless he re-filed it after thirty (30) days, it would have been proper to dismiss defendant's motion without prejudice.

Yet, because § 3582(c)(1)(A) is a non-jurisdictional provision, the government may waive enforcement of the exhaustion provision. Mandatory claim-processing rules are only mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Here, the government conceded the Court could consider an untimely compassionate release motion on the merits after thirty (30) days had passed from defendant's request to the warden [Doc. 101 p. 9]. Because that thirty-day window has now closed in this case, one of the exceptions to enforcing a mandatory claim-processing rule applies: the government has waived objection to this defendant's motion

7

on exhaustion grounds.  *See Alam*, 2020 WL 2845694, at *3 (citing *Cotton*, 535 U.S. at 630).  The Court may therefore consider defendant's merits argument.  *Cf. id.* (finding no waiver where the government "timely objected to Alam's failure to exhaust at every available opportunity").

### B.     Whether Extraordinary and Compelling Reasons Justify Relief

Because defendant requests release under § 3582(c)(1)(A)(i), the Court looks first to whether defendant has presented "extraordinary and compelling reasons" warranting the requested sentence reduction.  *See* § 3582(c)(1)(A)(i).  Prior to the First Step Act's modification of § 3582(c)(1)(A) and in compliance with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples.  USSG § 1B1.13.  Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement."  USSG § 1B1.13.

The application notes for § 1B1.13 provide additional guidance for applying the first prong of § 1B1.13's three-part test, describing four (4) categories of circumstances

that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n.1. First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.1(A). Secondly, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment. *Id.* at cmt. n.1(B). Third, certain family circumstances could provide reason to grant a sentence reduction. *Id.* at cmt. n.1(C). Fourth, the Director of the Bureau of Prisons could identify "other reasons" for relief, some "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. n.1(D).

Defendant makes no reference to the policy statement, apparently proceeding on the assumption that the Court may make an independent finding that extraordinary and compelling circumstances meriting relief exist [Doc. 90 p. 8–17]. Proponents of this view typically argue that courts should do so either by not applying § 1B1.13 or by stepping into the role of the BOP Director and applying subdivision (D)'s so-called "catchall" provision. Indeed, courts disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A) because the policy statement refers only to motions

9

by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A).[2]  USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018).

Courts have similarly diverged as to whether courts can craft their own combination of "other [extraordinary and compelling] reasons" under subdivision (D). *Compare United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."), *and United States v. Hickman*, No. 6:15-42,

---

[2]  Many courts have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*, No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions . . . filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the court follows the guidance of the Sentencing Commission limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release." (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)), *United States v. York*, Nos. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (discussing the "universal" application of § 1B1.13 and noting "the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider"), *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (similar), *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. April 3, 2019) (finding no "extraordinary and compelling reasons" where defendant failed to establish "serious deterioration in physical or mental health because of the aging process" under  § 1B1.13 cmt. n. (1)(B)).

Other courts have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate."  *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that a court may consider extraordinary and compelling reasons other than those specified in § 1B1.13's application notes);  *see also United States v. Maumau*, No. 2:08-cr-758, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (citing cases), and *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex.  June 17, 2019) (finding that § 1B1.13 "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582").

10

2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020) (finding that because the catchall provision provides that "other reasons" are to be "determined by the Director of the Bureau of Prisons," the Court has no authority to find "other reasons" beyond those listed in the policy statement), *with United States v. Young*, No. 2:00-cr-2-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (describing subdivision D's reference to the BOP Director as "a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act"), *and Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020) (finding that defendant presented "other reasons" for release where 69-year-old man suffered from a chronic lung disease, a serious heart condition, and liver disease, thus putting him at a high risk for contracting a severe case of COVID-19).

The Court agrees with the reasoning of those courts that have found that applying the policy statement, including subdivision D, to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary. The First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow, as defendant apparently argues, that it changed the nature of that review. *See United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019) ("Aside from allowing prisoners to bring a motion directly, the First Step Act did not change the standards for compassionate release"); *accord United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Shields*, No. 12-cr-410-1, 2019 WL 2359231 (N.D. Cal.

11

June 4, 2019) (noting defendant had not cited and the court had not discovered "any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments").

However, in this case, the Court does not need to adopt defendant's ostensible view of the policy statement's non-applicability to find that he has established extraordinary and compelling reasons.

Defendant's first and principal argument is that COVID-19 poses a serious, possibly fatal, risk to him due to his age (67) and medical conditions, including coronary artery disease, asthma, and chronic obstructive pulmonary disease ("COPD") [Doc. 90 p. 12]. As the government reasons, the COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction [Doc. 92 p. 15–16]. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that threatens "every person worldwide" [*Id.* at 16]. *See* § 1B1.13 n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").[3]

_____

[3] *See also United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (finding that defendant "failed to show that COVID-19 pose[d] a particular risk to him sufficient to constitute extraordinary and compelling circumstances" where he did not contend he suffered from a terminal illness or serious medical condition and where he had "produced no evidence indicating that the jail is not equipped to adequately address problems

On the other hand, as the government notes [Doc. 92 p. 17], a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19. § 1B1.13 n.1(A)(ii); *see also* People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 6, 2020) (hereinafter "People with Underlying Conditions"). A court could find that defendant's medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 n.1(A)(ii).

Defendant's medical conditions, in combination with the threat posed to him by COVID-19 at his facility, meet this standard. Defendant is age sixty-seven (67), placing him in the at-risk category of adults older than sixty-five (65), a group which the CDC reports has represented eight (8) out of ten (10) deaths from COVID-19 in the United States. Older Adults, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited June 24, 2020). Additionally, as his medical

---

arising due to COVID-19"), and *United States v. Mungarro*, No. 07-2276, 2020 WL 1933816, at *2 (E.D. Mich. Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms.").

records confirm [SEALED Doc. 92-9 p. 5], defendant suffers from three serious chronic conditions that increase his risk for severely contracting COVID-19, namely coronary artery disease, COPD, and Type 2 diabetes mellitus, as well as hyperlipidemia, benign essential hypertension, chronic kidney disease stage 3, peripheral neuropathy, gastro-esophageal reflux disease, and low back and neck pain, among other conditions.[4]  *See* People with Underlying Conditions.  As the government notes, defendant's diabetes appears to be "well controlled," in that "his latest A1C level was 6.5 percent, *i.e.*, above the normal/non-diabetic range yet comfortably below the 'goal for most people with diabetes,' which is 7 percent or less" [Doc. 92 p. 19 (citing [Doc. 92-9] and All About Your A1C, CDC, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (last visited June 1, 2020))].  And, defendant is taking medications for his COPD, diabetes, and coronary artery disease, as well as his other conditions [Doc. 92-9 p. 5–6].  Yet, defendant states that he is "unable to sufficiently care for himself in prison," forced to use a C-Pap machine to breathe while he sleeps and a container to use the restroom in the middle of the night, confined to a wheelchair ninety percent (90%) of the time, and beholden to another inmate to help him sit down while he showers and to provide him basic care [Doc. 90 p. 18].

Moreover, while the number of active infections at FCI Elkton has decreased significantly in recent weeks according to the BOP, a high number of active infections at FCI Elkton nonetheless remains.  As of June 10, 2020, the BOP was reporting 438 active

---

[4]  As the government notes [Doc. 92 p. 18], defendant also asserts that he suffers from asthma [Doc. 90 p. 12], but his medical records do not confirm this [Doc. 92-9].

14

infections among inmates and nine (9) inmate deaths, as well as seven (7) staff members with active infections and no staff deaths. *See United States v. Ryerson*, No. 3:09-cr-66-1, 2020 WL 3259530, at *1 (E.D. Tenn. June 16, 2020). Now, the BOP reports 360 active infections among inmates and 586 recovered inmates, with no change in the number of positive staff members or of deaths. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 6, 2020). These numbers suggest that defendant faces a high risk of infection, and in combination with his age and his three risk-heightening medical conditions, they indicate defendant faces a similarly high risk of life-threatening infection.[5] Indeed, the government states that the Court "could . . . find that the combination of those factors[, defendant's medical conditions, the COVID-19 risk, and the prevalence of COVID-19 at FCI Elkton,] amounts to an extraordinary and compelling reason within the meaning of U.S.S.G. § 1B1.13" [Doc. 92

---

[5] The Court also notes, as defendant highlights [Doc. 95 p. 3], that the Northern District of Ohio district judge presiding over an emergency habeas action brought by FCI Elkton inmates has reproved FCI Elkton for its slow and relatively ineffective efforts to test inmates, to "get at-risk inmates out of harm's way," and to comply with the court's orders to that effect. *Wilson v. Williams*, No. 4:20-cv-794, Doc. 85 p. 2, 4, 10 (N.D. Ohio May 19, 2020). On appeal of that district court's order granting preliminary injunctive relief to a subclass of the inmates, the Sixth Circuit stated that "[t]he transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risk, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and will have serious health effects as a result, including, and up to, death." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. June 9, 2020). Although the Sixth Circuit ultimately vacated the court's preliminary injunction because petitioners were unlikely to succeed on the subjective prong of their Eighth Amendment deliberate indifference claim, the Court found that the objective prong, whether petitioners were "incarcerated under conditions posing a substantial risk of serious harm," was "easily satisfied." *Id.* (internal citations omitted). Defendant herein was listed by the BOP as falling within the subclass of medically vulnerable inmates as defined by the district court. *Wilson v. Williams*, No. 4:20-cv-794, Doc. 35-1 p. 9 (N.D. Ohio Apr. 30, 2020).

15

p. 19]. The Court agrees, finding that defendant has established he suffers from multiple chronic medical conditions whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility." § 1B1.13 n.1(A); *see also United States v. Ardila*, No. 3:03-cr-264, 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (finding extraordinary and compelling reasons where defendant's risk of severe infection was heightened by his age (71) and diabetes, cardiovascular disease, hypertension, asthma, and obesity), and *United States v. Brooks*, No. 07-cr-20047, 2020 WL 2509107, at 6 (C.D. Ill. May 15, 2020) (finding extraordinary and compelling reasons where defendant at FCI Elkton suffered from morbid obesity, severe, chronic asthma, and high blood pressure and had recently undergone surgery, and where court noted high rate of infection at FCI Elkton and inadequacy of BOP's response at that facility); *cf. Bolze*, 2020 WL 2521273, at *8 (finding that defendant did not present extraordinary and compelling reasons where defendant suffered from gout, high blood pressure, hyperlipidemia, and stage 3 kidney disease and where defendant was incarcerated at a facility with few COVID-19 infections and the infection rate appeared to be declining).

### C. 18 U.S.C. § 3553(a) Factors and Danger to Community

Yet, even if a defendant presents extraordinary and compelling reasons for relief, as this defendant has done, Guideline § 1B1.13(2) provides that compassionate release is appropriate only where "the defendant is not a danger to the safety of any other person or

to the community, as provided in 18 U.S.C. § 3142(g)[.]"  Moreover, the Court's analysis of the 18 U.S.C. § 3553(a) factors must also support release.  § 3582(c)(1)(A) (instructing the Court to consider the relevant § 3553(a) factors "to the extent they are applicable"). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2).  § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011).  To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims.  § 3553(a); *see also Pepper*, 526 U.S. at 491.  Similarly, § 3142(g) instructs the Court to consider the nature and circumstances of the offense, the weight of evidence against the person, the person's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  Because the § 3553(a) and § 3142(g) inquiries overlap—and because neither of the parties addresses the § 3142(g) factors—the Court will consider them together.

Defendant contends that the § 3553(a) factors justify reducing his sentence to time-served or releasing him to serve the remainder of his sentence on home confinement [Doc. 90 p. 18–19].  Defendant argues that he has already served a sufficient length of time to satisfy the purposes of sentencing, that his criminal history was not "exceedingly long" at the time of his offense, that his offense conduct in this case did not involve "an

17

extremely large quantity of illicit drugs," that he would likely have received a lower sentence had he pled guilty, and that he has served the majority of his sentence and is scheduled for release in two (2) years [*Id.* at 18]. Moreover, defendant believes the sharp decline in his health over the last five (5) years in prison has reduced the need to deter him from future crime because he will likely need assistance to live outside prison [*Id.* at 18–19]. And, defendant states that his daughter, Jessica Perry, with whom he lived for more than a year while on pretrial release, will take him in, care for him, and permit him to be on her health insurance until he can reapply for social security [*Id.* at 19]. Defendant states that no one in Ms. Perry's home has any criminal history [*Id.*]. Finally, defendant argues that defendant's offense conduct does not deserve a death sentence and that allowing him to remain in FCI Elkton exposes him to the "great danger of a painful and inhumane death" [*Id.*].

The government defers to the Court's determination of whether § 3553(a) supports a sentence reduction in defendant's case, but it asks the Court, if granting release, to impose an additional term of supervised release "not to exceed the unserved portion of the original term of imprisonment" and to order home confinement as a release condition [Doc. 92 p. 20–21 (citing §§ 3582(c)(1)(A), 3583(d), and USSG § 5F1.2)]. The government also requests that the Court protect public health by ordering defendant quarantined for a period of at least fourteen (14) days before his release [*Id.*]. As to the § 3553(a) factors, the government states that defendant had served sixty-seven (67) months, approximately sixty-three percent (63%), of his 106-month sentence at the time

18

it filed its motion [*Id.* at 20], which it notes is a consideration in determining whether a sentence modification is appropriate [*Id.* (citing *United States v. Kincaid*, No. 19-6271, 2020 WL 1951899, at *1 (6th Cir. Apr. 23, 2020) (order))].  It also states that defendant has incurred disciplinary sanctions on six (6) occasions while incarcerated, including as recently as November 2019, when he was insolent to a staff member [*Id.*].  Thus, the government concludes that granting him immediate release "may be inconsistent with the totality of the § 3553(a) factors" [*Id.*].

The Court begins by noting as to the nature and circumstances of the offense that a jury convicted defendant of six (6) counts, including three (3) counts of distribution of oxycodone, one (1) count of possession with intent to distribute oxycodone, one (1) count of possession of firearms in furtherance of a drug trafficking offense, and one (1) count of being a felon in possession of firearms and ammunition.  The Court also incorporates by reference the presentence report's description of the facts as they relate to defendant's offense conduct [SEALED Doc. 49 ¶¶ 4–24], which it has reviewed in addition to presiding over defendant's trial.  In particular, the Court notes that the officers and agents of the Fourth Judicial District Drug Task Force supervised three controlled buys of controlled substances from defendant at his residence and that they executed a search warrant at his home, during which they recovered multiple prescription pills, multiple firearms and rounds of ammunition [*Id.* ¶¶ 12–14, 16–17].  Ultimately, defendant was held responsible for 151 Oxycodone tablets, 102 Oxymorphone tablets, 117.5

19

Alprazolam tablets, and 11 Dihydrocodeinone tablets, an equivalency of 42.31 kilograms of marijuana [*Id.* ¶¶ 18, 24].

The Court incorporates by reference its discussion of defendant's history and characteristics at the time of his sentencing [Doc. 63 p. 20–21], but it also highlights certain facts especially pertinent to the instant motion. The Court notes that defendant was sixty-one (61) at sentencing and that many of the medical conditions from which defendant currently suffers also afflicted him at that time, namely coronary artery disease, hypertension, obstructive sleep apnea, chronic back and neck pain that resulted in surgery, degenerative disc disease, hyperlipidemia, and COPD [*Id.*]. Indeed, the Court acknowledged at sentencing that defendant stated he used oxygen to breathe and a wheelchair to move [Doc. 63 p. 24–25]. Moreover, defendant suffered from many of these physical ailments and disabilities at the time he committed the offense conduct in this case [*Id.* at 23]. However, defendant asserts that his health has declined further during incarceration and that he now travels by wheelchair ninety percent (90%) of the time and requires assistance to shower and to breathe while sleeping, and the government does not appear to dispute these facts. Additionally, defendant's criminal history category was relatively low at the time he was sentenced, a category of II reflecting six (6) arrests or citations, including convictions for disorderly conduct, attempt to commit a felony, aggravated assault, public drunkenness, contributing to the dependency of a minor, possession of drug paraphernalia, armed robbery, and possession of Schedule VI with intent to sell; only one of these offenses resulted in any criminal history points [*Id.*

20

at 21]. Indeed, defendant committed three (3) of these offenses when he was twenty-five (25), including the armed robbery [Doc. 49 ¶¶ 45–47]. And, unlike many defendants involved in drug trafficking offenses before this Court, defendant denied using any illegal substances, other than marijuana when he was twenty-one (21), and abusing prescription medications [*Id.* at 21]. Yet, the government represents—and defendant does not dispute—that he incurred disciplinary sanctions on six (6) occasions while incarcerated, including as recently as November 2019.

Turning to the kinds of sentences available and the applicable guideline range, the Court notes that it imposed a sentence at the low-end of the guideline range, which was 106 months to 117 months [Doc. 63 p. 18]. This effective guideline range reflected a guideline range of forty-six (46) to fifty-seven (57) months as to Counts One through Four and Count Six and a sixty-month mandatory consecutive term of imprisonment for Count Five (possessing a firearm in furtherance of a drug trafficking offense) [*Id.*; *see also* Doc. 59 p. 2]. And, although the Court denied defendant's downward departure motion, it stated that it considered defendant's arguments, and "particularly his medical condition," in fashioning a sentence that complied with the § 3553(a) purposes [Doc. 63 p. 27]. Additionally, the Court notes the government's calculation that as of early June, defendant had served sixty-seven (67) months, approximately sixty-three percent (63%), of his 106-month sentence.

Considering all the above in light of the purposes set forth in § 3553(a)(2), the Court finds that reducing defendant's term of imprisonment will produce a sentence that

is "sufficient, but not greater than necessary." The Court noted at sentencing and again here that defendant's offenses were multifold and serious and that his offense conduct involved multiple drugs in "not insignificant" quantities [Doc. 63 p. 22]. And, the Court believes defendant's criminal history and his infractions while incarcerated underline the need to impose a sentence sufficient in defendant's case to promote respect for the law. Yet, many of defendant's personal characteristics, including his increased immobility, his dependence on others to perform basic life functions, and his plan to live with his daughter, indicate defendant's 106-month sentence may no longer be necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of defendant. Moreover, defendant has served more than sixty-seven (67) months of his 106-month sentence, a significant penalty, especially given that his guideline range was forty-six (46) to fifty-seven (57) months as to Counts One through Four and Count Six and that Count Five tacked on a sixty-month mandatory consecutive term of imprisonment. Additionally, § 3582(c)(1)(A) authorizes the Court to impose a term of supervised release with conditions "that does not exceed the unserved portion of the original term of imprisonment," which the Court will do in this case to serve the § 3553(a) factors and in particular to promote just punishment and afford additional specific deterrence. *See* 18 U.S.C. § 3583(a), (c).

The Court also distinguishes its holding here from its decision to deny defendant's motion for a downward departure at sentencing. The Court notes that USSG § 5H1.1 of the Sentencing Guidelines provides in relevant part that age may be a reason to depart

downward where the defendant is "elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration," if these characteristics are "present to an unusual degree and distinguish the case" from the typical case under the guidelines.  The Court considered this policy statement's applicability to defendant at his sentencing and ultimately concluded that defendant's circumstances did not sufficiently distinguish his case from the typical case [Doc. 63 p. 26 (citing *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995) (noting that downward departures under § 5H1.1 are "rare" and that defendant must be "sufficiently unusual" to warrant departure))].  Yet, the Court originally sentenced defendant prior to the COVID-19 pandemic, and it believes that the danger now posed to defendant's health by infection, especially given the prevalence of COVID-19 at FCI Elkton, changes the calculus.  For instance, defendant has asserted that he requires the assistance of another inmate to care for himself, including by helping him shower.  This circumstance alone underlines the impossibility of defendant social distancing to guard himself against infection while incarcerated.  As noted in discussing whether extraordinary and compelling reasons for release exist, defendant's serious, chronic medical conditions in combination with the COVID-19 threat substantially diminish defendant's ability to provide self-care within the environment of a correctional facility. Thus, while defendant's age and infirmity were not "unusual" alone, they now present one of those "rare" occasions where age and infirmity support a reduced sentence.

23

The Court recognizes that reducing defendant's sentence to time-served may create a sentence disparity between defendant and other defendants found guilty of possession of a firearm in furtherance of a drug trafficking offense. § 3553(a)(6). Granting defendant a time-served sentence when he has served sixty-seven (67) to sixty-eight (68) months and thus less than half of his consecutive sixty-month term for his § 924(c)(1)(A)(i) conviction may create a disparity with defendants with similar criminal records convicted of a § 924(c) offense. However, the Court does not find that this disparity is "unwarranted" given the possibility that defendant, unlike many similarly situated offenders, faces a heightened risk of fatally contracting COVID-19 while incarcerated.

As the foregoing discussion demonstrates, the Court finds that defendant is not a danger to the safety of any other person or to the community under § 3142(g). Weighing the nature and circumstances of the offense, the weight of evidence against defendant, defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by defendant's release, the Court believes that defendant's deteriorated physical condition and his intent to reside with his daughter and her family render him unlikely to pose a danger to his community. Moreover, the Court will impose an additional term of supervised release with the condition of home confinement for twelve (12) months, thus limiting defendant's capacity to engage in further criminal conduct during the term he would otherwise have

served in prison.  *See* USSG § 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment.").

Finally, the Court notes that § 1B1.13 directs it to consider whether the reduction is "consistent with this policy statement," mirroring § 3582(c)(1)(A)'s command that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission.  The Court finds that a reduction in this case is consistent with § 1B1.13 and any other applicable policy statements issued by the Sentencing Commission.

## IV.    Conclusion

In sum, the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) due to the government's waiver of the exhaustion requirement.  Because defendant presents extraordinary and compelling circumstances for release and otherwise satisfies the requirements of § 3582(c)(1)(A) and the applicable policy statement and because the § 3553(a) factors support a sentence reduction, the Court will **GRANT** defendant's motion for compassionate release [Doc. 90].  An amended judgment order will enter in conjunction with this opinion.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

25